(41 App. Div. 118.)

## RICHARDSON v. CITY OF SYRACUSE.

(Supreme Court, Appellate Division, Fourth Department.  May 24, 1899.)

INJURIES ON SIDEWALKS—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DEFECT —QUESTION FOR JURY.

Where a woman, while returning from church, fell through a hole in the sidewalk, which was partially obscured by the dresses of two children walking closely in front, it cannot be said as matter of law that she was guilty of contributory negligence, though she knew of the existence of the hole.

Appeal from trial term, Onondaga county.

Action by Elizabeth Richardson against the city of Syracuse. From a judgment entered on a verdict for plaintiff, and from an order denying a new trial, defendant appeals.  Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

James E. Newell, for appellant.
D. F. McLennan, for respondent.

SPRING, J.  The plaintiff is a married lady, about 42 years of age, and was injured on the 28th day of November, 1897, by stepping through a hole in the sidewalk on South Beach street, in the city of Syracuse.  South Beach street is one of the important streets, apparently, in that city.  The walk upon which plaintiff was injured was made of planks running crosswise.  It was about four feet in width, and the planks composing it about two inches in thickness.  In March, 1897,—about eight months prior to the accident,—the plank where this accident occurred had broken as a traveler upon the sidewalk stepped upon it, and it was taken out, leaving a hole extending across the sidewalk about eight inches wide; and the dirt had washed away underneath, leaving a depth of about one foot.  This condition had remained since March preceding the accident; so it is conceded substantially that the city was guilty of negligence in permitting the walk to remain in this plight.  The trial judge so stated to the jury.  There was no exception to it, and it was necessarily a fact taken for granted upon the trial.  The only question in the case, therefore, is as to whether the plaintiff met the requirement imposed upon her of showing she was free from fault at the time of the injury.  The grass on each side of this walk had grown up over the ends, and matted down, so that clear walking space on the walk was less than three feet in width.  The plaintiff for years had been employed in the family of Maj. Davis, in the city of Syracuse.  She knew the condition of this walk.  Before the accident she had passed over it frequently, was aware of this hole, and made no concealment of her knowledge of that subject.  On the morning in question, the plaintiff, a co-servant in this household, by name Mrs. Almon, and three little children, went to mass at St. Vincent De Paul's Church, at 8 o'clock.  The church was a considerable distance from the residence of Maj. Davis, and as these people were returning home it was about 9 o'clock when they reached the place in the sidewalk

where the accident occurred. The land at this point descends quite sharply. Mrs. Almon, in brief, describes the accident as follows:

"An accident befell the plaintiff that morning. We were walking along slowly. She was on my right, and she stepped into the hole, falling sort of in front of me. * * * At the time when she stepped into the hole, two children—two little girls—were in front of us. They were walking just in front of us. They had been to church, and were coming home with us. We were walking very slow."

In her cross-examination she testified that she and the plaintiff were talking at the time the accident occurred; that their conversation was pertaining to the services at the church that morning; that she did not see the hole before the plaintiff fell, although she knew of its existence. Again, she stated that the dresses of the little girls who were in front of them came to the tops of their shoes, and that plaintiff was slightly ahead of herself, Mrs. Almon, and close behind the little girls,—as the witness expressed it, "as close as possible." The plaintiff's own version of the occurrence is as follows:

. "The boards were crosswise. One plank was gone. We were walking slowly, and very suddenly my foot slipped with a jerk. To the best of my knowledge the toe of my boot reached the opposite side of the walk—of the hole—as the children moved on and we were moving forward. To the best of my knowledge the toe of my boot reached the opposite side; not sufficient to hold me, but sufficient, as I sprang forward, to throw me; slipped; struck my shin against the opposite board in that manner [illustrating], scraping it and cutting it. And at the same time when I went down I was thrown to the left, on my hip, in front of the lady who was walking with me. At the time I happened to be a little in advance of her, perhaps a half a step or a step, as the walk at that place was very narrow. The turf had turned in over the walk, and it made a very narrow passage for two, and I was a little in advance. I went down. Mrs. Almon assisted me up. She was with me. She held me for a minute. I began to be deathly sick a minute. A second or two she held me. She lifted me up, and supported me for a second."

And further on she testified:

"I was looking down. The children happened to approach us so closely that I saw nothing but their garments. I was looking down and forward, and noticing the children's garments. Yes, down, and towards the children's garments. Previous to this I could not see the hole in the walk. As I approached the hole in the walk, I did not see the hole. At the moment that I saw the children's garments, or looked at the children's garments,—was attracted by them,—I went down. Before I got to this place, as I was approaching it, I had been looking ahead, and down at the walk. But at this time I came closer to the children."

The evidence as to the way in which the accident occurred is substantially undisputed; that is: These two ladies were going from church, on this sidewalk, with two little girls closely in front of them. The plaintiff, with her companion, was talking about the services, and, with her mind diverted in this way, and knowing the hole existed, which, at the time, perhaps, was obscured by the dresses of the two children in front, she stepped down into this hole, not seeing it, and was injured. The counsel for the defendant strenuously insists that, because the plaintiff was well aware of the existence of this hole, she was careless, and cannot recover. It seems to

me it is well established by the authorities in this state that the rule does not go to the extent claimed by the counsel. As I understand it, while the fact of knowledge of a defect calls for the exercise of greater care and caution on the part of the traveler, he is still where he has a right to be, and the fact that he uses the walk in a dangerous condition does not debar a recovery if he is injured by reason of the defect. It is still a question of fact for the jury. The rule is thus stated in Palmer v. Dearing, 93 N. Y. 7, at page 10:

"While previous knowledge, by a party injured, of a dangerous situation, or impending danger, from which a person of ordinary intelligence and prudence might reasonably apprehend injury, generally imposes upon him the duty of exercising greater care and caution in approaching it, yet the degree of care which should be required of such a person has uniformly been held in this state to be a question of fact to be determined by the jury."

See, also, McPherson v. City of Buffalo, 13 App. Div. 502, 43 N. Y. Supp. 658, where Justice Hardin has collated the authorities. Also, Evans v. City of Utica, 69 N. Y. 166; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077; Dale v. City of Syracuse, 71 Hun, 449, 24 N. Y. Supp. 968. Under these authorities, it is unmistakable that there was a plain question of fact for the jury to pass upon, and it was submitted to the jury in a very perspicuous charge.

There was substantial controversy on the trial as to the extent of the injuries sustained by plaintiff. When a child, she received an injury, which, it is claimed, left her with tuberculosis. The point of the injury was the same as where she was hurt at this time. The injury in her childhood happened when she was 4 years of age, and until she was 12 she kept her leg bandaged, as it was sensitive to the touch. From that time until this accident there were no ill effects, as the evidence shows, from this early injury. Some of the physicians testified she has tuberculosis. The trial judge, however, distinctly stated to the jury that, in case they reached the conclusion she had in her system a disease resulting from the early accident, her recovery must be limited to the injuries inflicted upon her by falling on the sidewalk; that, to the extent the early disease, if it existed, was aggravated by stepping into this hole, she would be entitled to recover, if entitled to recover at all. There was, first, a question of fact as to whether there were any evil effects existing from the early accident. That was submitted to the jury. In the second place, the court left it to the jury to determine the amount of damages to which she would be entitled in case the previous injury had left its traces, but was augmented or broke out afresh by reason of the accident in question. The plaintiff was a married woman, and the limitations upon the amount of the verdict imposed by that relation were distinctly stated to the jury by the court. The judgment and order should be affirmed, with costs to the respondent.

Judgment and order affirmed, with costs. All concur, except Mc-LENNAN, J., not voting.